653 A.2d 5

Sarah T. HARRITY, Appellant

v.

MEDICAL COLLEGE OF PENNSYLVANIA HOSPITAL, Ellen
C. Maitin, M.D., Richard C. Smith, M.D., Medical College
of Philadelphia Orthopedic Associates.

Sarah T. HARRITY, Appellant

v.

Anthony J. PALMACCIO, Jr., M.D., Individually,
Randall N. Smith, M.D., Individually t/a
Palmaccio and Smith Associates.

Superior Court of Pennsylvania.

Argued Oct. 18, 1994.

Filed Dec. 8, 1994.

Reargument Denied Feb. 9, 1995.

Joseph J. Schafle, Jr., Philadelphia, for appellant.

Charles B. Burr, II, Philadelphia, for appellees (at 2606).

Francis McGovern, Plymouth Meeting, for appellees (at 2607).

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

This is a consolidated appeal involving summary judgment entered in two separate civil actions based upon the finding that appellant, Sarah T. Harrity, had released all the defendants from liability. We reverse and remand.

The relevant facts follow. On June 22, 1986, appellant fell at the Claridge Hotel in Atlantic City, New Jersey, and fractured her wrist. She subsequently instituted an action in federal court against Claridge Hotel for her injuries ("Claridge action").

On June 21, 1989, appellant instituted an action at June Term, 1988, No. 3219 in the civil division of the Court of Common Pleas of Philadelphia County against Doctors Anthony J. Palmaccio, Jr., and Randall N. Smith, and Palmaccio & Smith Associates ("Palmaccio action").

We summarize the allegations contained in that complaint. On June 23, 1986, appellant sought treatment with Dr. Palmaccio for the wrist fracture. The next day, Dr. Palmaccio placed a cast over the fracture, and appellant immediately began to suffer severe pain and numbness, of which she informed Dr. Palmaccio on at least three occasions. As a

result of his medical malpractice in regard to treatment rendered including improperly setting the fracture and misdiagnosing its extent, appellant sustained permanent injury to her left arm, wrist, and hand. She now suffers from carpal tunnel syndrome, restricted range of motion, persistent pain, numbness, and reduced strength and function. Appellant has undergone four separate surgeries to repair the condition.

On October 2, 1989, appellant instituted an action at September Term, 1989, No. 5609 in the civil division of the Court of Common Pleas of Philadelphia County against The Medical College of Pennsylvania Hospital, The Medical College of Pennsylvania Orthopedic Associates, and Doctors Ellen C. Maitin and Richard Smith ("Maitin action"). In this lawsuit, appellant seeks recovery for damages caused by an allegedly negligent surgery performed on her wrist by Dr. Maitin on December 8, 1986. The record indicates that appellant retained an expert witness with regard to the Palmaccio action, and the expert opined that some of the permanent injuries to the wrist were exacerbated or caused by the surgery performed by Dr. Maitin. Hence, appellant instituted the Maitin action.

On February 13, 1990, appellant executed a release in the Claridge action. In this release, appellant released Claridge Hotel and any other person or corporation from all actions or claims arising out of an accident which occurred June 22, 1986 "*and for which suit was brought in the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 88-4913, styled: Sarah T. Harrity vs. Claridge at Park Place, Inc. . . . .*" (emphasis added).

On January 3, 1992, the defendants in the Palmaccio action filed a request for summary judgment, contending that the release executed in the Claridge action operated to release them. On February 19, 1992, Judge Albert W. Sheppard, Jr., granted summary judgment to the Palmaccio defendants based on the release. Appellant petitioned for reconsideration, and on March 19, 1992, Judge Sheppard vacated his own February 19, 1992 order "pending reconsideration" and determined that the "matter may be submitted to any motions

court judge." Trial court order, 3/19/92, at 1. On April 16, 1992, due to the following described events in the Maitin action, Judge William J. Manfredi issued an order denying summary judgment to the Palmaccio defendants based upon the release. On May 12, 1993, the Palmaccio action was consolidated with the Maitin action for purposes of discovery. The Palmaccio defendants presented a second motion for summary judgment, again based solely upon the language of the release, and Judge Sandra Mazur Moss entered an order granting summary judgment to the Palmaccio defendants. A timely appeal in that action followed.

In the Maitin action, the following occurred. On January 17, 1991, the Maitin defendants filed a motion for judgment on the pleadings, arguing that the release in the Claridge action operated to release them. On March 18, 1991, Judge Samuel M. Lehrer denied the motion for judgment on the pleadings, concluding that the release language was "not unambiguous." Trial court order, 3/18/91, at 1. The Maitin defendants filed a motion for reconsideration. On May 15, 1991, Judge Lehrer denied the Maitin defendants' motion for reconsideration of his March 18, 1991 order.

On December 17, 1991, the defendants in the Maitin action filed a second motion for reconsideration, which relies upon an allegedly controlling Superior Court decision, *Dublin by Dublin v. Shuster,* 410 Pa.Super. 1, 598 A.2d 1296 (1991). This second motion for reconsideration was denied by Judge Lehrer on February 24, 1992.

On March 6, 1992, the Maitin defendants filed yet another motion, this time for summary judgment, again based on the release. The motion for summary judgment then was denied by Judge Manfredi on April 16, 1992. Judge Manfredi also issued an order denying the Maitin defendants permission to file an interlocutory appeal from the April 16, 1992 order.

The next document contained in the record is an order issued on July 6, 1993, by Judge Moss granting summary judgment to the Maitin defendants. The text of that July 6, 1993 order is as follows:

AND NOW, this 6th day of July, 1993, upon consideration of the Motions of all Defendants for Summary Judgment, Plaintiff's response thereto, and Oral Argument had thereon, be it and it hereby is

ORDERED

that Summary Judgment is granted in favor of all Defendants and against Plaintiff on the authority of *Dublin vs. Shuster*, [410] Pa.Super. [1], 598 A.2d 296 [1296] (1991), *Buttermore vs. Aliquippa Hospital*, [522] Pa. [325], 561 A.2d 733 (1989) and *Smith vs. Thomas Jefferson University Hospital*, [424] Pa.Super. [41], [621] A.2d [1030] (464 PHL 92; March 16, 1993).

A timely appeal in the Maitin action followed.

■ Initially, we discuss whether Judge Moss had the power to overrule the interlocutory orders entered by other judges of the same court in the same case. Our Supreme Court admonished in *Yudacufski v. Commonwealth of Pennsylvania Department of Transportation*, 499 Pa. 605, 454 A.2d 923, 926 (1982), that "absent the most compelling circumstances, a judge should follow the decision of a colleague on the same court when based on the same set of facts." The rule is applied strictly when a second order overrules an interlocutory order issued in the *same action*. "As a general rule it is improper for a trial judge, absent new evidence, to overrule an interlocutory order by a judge of the same court in the same case." *Turner v. Kohl*, 420 Pa.Super. 507, 509, 617 A.2d 20, 21 (1992), quoting *Reed v. Reed*, 354 Pa.Super. 284, 288, 511 A.2d 874, 876 (1986). Where a motion has been presented and decided and where no new facts are presented in a motion seeking the same relief, the first order should be followed based on considerations of judicial economy and efficiency. *Id.* Equally important, however, is that the rule prevents forum shopping; if the rule were not in place, the same issue could be raised again and again before different judges of the same court until the litigant finds a judge sympathetic to his position. *Id.*

This issue was discussed in *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 600 A.2d 568 (1991), where preliminary objections were denied by a trial judge, and another trial judge of the same court granted the preliminary objections after the defendants requested reconsideration. The second trial judge had granted similar preliminary objections in two other actions and then based its decision to reconsider the decision of the first trial judge on the fact that the cases all should be treated consistently.

We reversed, noting that the prevailing party, who had been unsuccessful before one judge, had been able to convince another judge on the same court that the relief should be granted. We held, "That is not how our system of justice is intended to operate. It is a well-recognized principle that 'judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other.' *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827, 831 (1989)." *Id.,* 410 Pa.Super. at 510, 600 A.2d at 570. We ruled that once an interlocutory order has been entered, the party in whose favor the decision was rendered must be permitted to rely upon it, stating:

> To allow the opposing party to continue to attack that decision by seeking the same relief from a different judge, as if the order were somehow appealable within the trial court system, is not fair to the successful party. The proper avenue of redress for the opposing party is to wait until it can appeal the allegedly objectionable ruling once a final appealable order has been entered in the case.

*Id.,* 410 Pa.Super. at 511, 600 A.2d at 570–71.

Herein, the defendants in the Maitin case continued to petition to have the release construed to release them. This was decided adversely to the Maitin defendants *four times* and by two different judges of the Court of Common Pleas of Philadelphia County. There is no question that Judge Moss had before her the same set of facts which were before Judges Lehrer and Manfredi. The language in the release did not change, and no affidavits were filed by the moving parties when the new motion was presented to Judge Moss. Without

new evidence and as discussed in more detail *infra,* based upon the same case law, Judge Moss overruled Judge Manfredi's decision in the Palmaccio action and then granted judgment to the defendants in the Maitin action based on her disposition of the Palmaccio action. This was improper. *Turner v. Kohl, supra,* 420 Pa.Super. 507, 617 A.2d 20; *Golden v. Dion & Rosenau, supra,* 410 Pa.Super. 506, 600 A.2d 568. In addition, Judge Lehrer stated clearly that he refused the grant of judgment to the Maitin defendants based upon the release because the release was not unambiguous. Judge Lehrer's decision in the Maitin action was reaffirmed on three separate occasions; the last time by Judge Manfredi. Judge Lehrer's decision also was used as the basis for Judge Manfredi's denial of summary judgment in the Palmaccio action.

Appellees counter [1] that the case of *Smith v. Thomas Jefferson University Hospital,* 424 Pa.Super. 41, 621 A.2d 1030 (1993), represented new, controlling case law authorizing reconsideration and vacation of the previous orders. Our examination of the decision in *Smith* establishes that it does not in any way extend established case law in this area. *Smith* is nothing more than the continued application of the case law brought to the attention of, and rejected by, Judge Lehrer.

*Smith* applies the decisions rendered in *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 561 A.2d 733 (1989), and *Dublin by Dublin v. Shuster,* 410 Pa.Super. 1, 598 A.2d 1296 (1991). *Buttermore* was used by all appellees in their first motions asking that the release be applied to them. *Dublin* was used

---

1. Appellees' attempt to apply the exception to this doctrine contained in *Hutchison by Hutchison v. Luddy,* 417 Pa.Super. 93, 611 A.2d 1280 (1992), *petition for allowance of appeal granted,* 533 Pa. 660, 625 A.2d 1193 (1993), also is misguided. In *Hutchison,* we ruled that the doctrine did not apply for two reasons not present in this case. First, in *Hutchison,* the judge who issued the first order had retired and was not available to reconsider his order. Second, and significantly, a good deal of new evidence on the issue had been developed subsequently. In fact, there was a new party, an intervenor, interested in the issue, and a hearing had been conducted on the matter. We noted in *Hutchison* that the record was replete with evidence that circumstances had changed between the date of the first order and the date of the order reversing the first order. Herein, no new *evidence* on the issue was presented to Judge Moss.

as a basis for the second petition for reconsideration of the denial of judgment on the pleadings in the Maitin action.

We examine whether *Smith* represents a significant development in this area of the law. In *Buttermore,* the plaintiff was involved in an automobile accident on December 3, 1981, suffering cuts on his head and a broken neck. He executed a general release, without the benefit of a lawyer, in favor of the driver of the other automobile involved in the accident. He subsequently initiated suit against the medical providers who had treated his injuries and who argued that the release applied to them. The plaintiff argued that it was not his intent to release the medical providers; however, since the release clearly released all entities from liability for any injuries arising from the automobile accident and since there was no allegation of fraud, accident or mutual mistake as to the scope of the release, the Supreme Court held that it applied to the medical providers even though the providers were not specifically named therein.

*Dublin* applied the holding of *Buttermore.* In *Dublin,* plaintiff was involved in a bicycle accident and executed a general release in favor of the driver of the vehicle. Minor-plaintiff, through his parents, subsequently instituted a medical malpractice action against the medical providers who had treated his injuries. We held that *Buttermore* was controlling despite the fact that the release had been negotiated by the parents of the minor plaintiff and despite the fact that the subsequent medical malpractice represented a distinct tort, not discussed in the release.

In *Smith,* plaintiff's decedent was injured in an automobile accident, and plaintiff executed a general release in favor of the driver of the automobile. Applying the release, the trial court dismissed the action brought against the medical providers. We affirmed. The appellant in *Smith* presented the *same argument* as the plaintiff in *Buttermore, i.e.,* she never "intended to release" the medical providers. *Smith v. Thomas Jefferson University Hospital, supra,* 424 Pa.Super. at 44, 621 A.2d at 1031. Although the appellant in *Smith* also contended that both parties were mutually mistaken as to the

scope of the release, the only evidence as to this issue was that *she* had not intended to release anyone other than the first tortfeasor. We, therefore, held the appellant had failed to demonstrate the existence of mutual mistake. *Smith* thus did *not* clarify *Buttermore* in any manner, as suggested by appellees. It contains no new law. The plaintiff in *Smith* then argued that the trial court improperly dismissed the action against the medical providers since that action rested upon a separate and distinct tort. We stated, "This same argument, however, was advanced in a case similar to the one at bar and rejected by this court.... *Dublin by Dublin v. Shuster,* 410 Pa.Super. 1, 598 A.2d 1296 (1991)...." *Id.* at 46, 621 A.2d at 1032.

■ Where a new case is merely an application or reaffirmation of previous case law, the new case may not provide a basis upon which a judge of concurrent jurisdiction may overrule the decision of his colleague rendered in the same action. *Turner v. Kohl, supra,* 420 Pa.Super. 507, 617 A.2d 20. The *Smith* case does not clarify or overrule existing case law. *Compare Vincent v. Fuller Co.,* 400 Pa.Super. 108, 582 A.2d 1367 (1990), *rev'd on other grounds,* 532 Pa. 547, 616 A.2d 969 (1992) (since our Supreme Court had issued two cases which clarified law, judge was permitted to reconsider interlocutory order of another judge entered in the same action). As *Dublin* and *Smith* merely applied previous case law, there was no basis upon which Judge Moss should have overruled her colleague. *Turner v. Kohl, supra,* 420 Pa.Super. 507, 617 A.2d 20.

■ In addition, we believe that Judge Moss's decision is in error. Preliminarily, we note that our scope of review from a grant of summary judgment is plenary. *See Schriver v. Mazziotti,* 432 Pa.Super. 276, 638 A.2d 224 (1994); *Mellon v. Barre–National Drug Co.,* 431 Pa.Super. 175, 636 A.2d 187 (1993); *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa.Super. 170, 628 A.2d 880 (1993). Now, we examine the body of the release:

KNOW ALL MEN BY THESE PRESENTS that Sarah T. Harrity, (hereinafter referred to as Releasor) for and in

consideration of the sum of six hundred dollars ($600.00) in hand paid does hereby for herself and her administrators, successors and assigns, remise, release, acquit and forever discharge Claridge Hotel and Casino, their heirs, executors, administrators and assigns as well as their insurance carriers, and/or any other person, firms, corporations or entities (Releasees) of and from all, and all manner of, actions and causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity arising out of an accident which occurred June 22, 1986 and for which suit was brought in the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 88–4913, styled: *Sarah T. Harrity vs. Claridge at Park Place, Inc.*, which against the releases, Sarah Harrity ever had, now has, for, or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of these presents.

■ In construing the release, we are guided by the following law. A release is interpreted according to general contract principles. *Flatley by Flatley v. Penman*, 429 Pa.Super. 517, 632 A.2d 1342 (1993); *see also Vaughn v. Didizian*, 436 Pa.Super. 436, 648 A.2d 38 (1994).

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. *McMahon v. McMahon*, 417 Pa.Super. 592, 612 A.2d 1360 (1992) (*en banc*). The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Trumpp v. Trumpp*, 351 Pa.Super. 205, 505 A.2d 601 (1985). When the terms of a written contract are clear, this Court will not re-write it to give it a construction in conflict with the accepted and plain meaning of the language used. *Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514 (1981). Conversely, when the language is ambiguous and the intention of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does not apply to the admission of oral testimony to show both the intent of the

parties and the circumstances attending the execution of the contract. *Dewitt v. Kaiser,* 335 Pa.Super. 258, 484 A.2d 121 (1984).

*Acme Markets, Inc. v. Federal Armored Express, Inc.,* 437 Pa.Super.' 41, 45–46, 648 A.2d 1218, 1220–21 (1994) quoting *Creeks v. Creeks,* 422 Pa.Super. 432, 435, 619 A.2d 754, 756 (1993).

■ Furthermore, a written contract must be construed as a *whole* and the parties' intentions must be ascertained from the *entire* instrument; effect *must* be given to each part of a contract. *Wrenfield Homeowners Ass'n, Inc. v. DeYoung,* 410 Pa.Super. 621, 600 A.2d 960 (1991); *Walton v. Philadelphia National Bank,* 376 Pa.Super. 329, 545 A.2d 1383 (1988); *accord Vaughn v. Didizian, supra,* 436 Pa.Super. 436, 648 A.2d 38 (intent of parties must be ascertained from a reading of the entire release).

Finally:

In order to ascertain the intention of the parties, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." *International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America,* 497 Pa. 102, 109, 439 A.2d 621, 624 (1981). The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement....

*Wrenfield Homeowners Ass'n, Inc. v. DeYoung, supra,* 410 Pa.Super. at 627, 600 A.2d at 963; *accord Vaughn v. Didizian, supra,* 436 Pa.Super. 436, 648 A.2d 38 (release must be construed in light of the conditions and circumstances surrounding its execution).

■ Herein, appellant released persons and entities from claims, actions, et cetera "arising out of an accident which occurred June 22, 1986 *and for which suit was brought in the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 88–4913, styled: Sarah T. Harrity vs. Claridge at Park Place, Inc.....*" (emphasis added).

Thus, the release, on its face, applies only to causes of action, et cetera for which suit was brought in the Claridge action. In other words, the release applies only to that action. This is extremely clear limiting language.

A copy of the complaint in the Claridge action, which was appended to appellant's responses to appellees' numerous motions, indicates that Claridge action was not brought for the malpractice of appellees. In the Claridge action, appellant sought recovery solely for the negligence of Claridge in maintaining its hotel lobby and for the injuries directly connected to the fall. Reproduced Record ("R.R.") at 12a–16a. No mention in the complaint is made of any of appellees' actions in connection with the treatment of these injuries, appellant's resultant four surgeries, or appellant's carpal tunnel syndrome. Thus, suit was not brought in the Claridge action for the malpractice at issue in these two actions, and the release does not apply here.

The fact that the release was not intended to apply to the present actions is confirmed by the affidavit of the lawyer who negotiated the release. R.R. at 109a–13a. The affidavit indicates, in complete conformity with the above-emphasized language, that the release was intended to apply to the "Claridge case only." R.R. at 112a.

The circumstances surrounding the execution of the release also support this interpretation. *Appellees* paid no consideration for the release and were not involved in negotiating it. *See Vaughn v. Didizian, supra,* 436 Pa.Super. 436, 648 A.2d 38 (where release was executed *prior to* occurrence of malpractice of defendant, defendant's actions could not have been contemplated by parties as being within scope of release; release not applicable in action instituted for malpractice). The release is for a nominal amount, commensurate with the limited liability of Claridge Hotel. In explaining why the Claridge action was settled for a small amount of money, the attorney states that his discovery in the suit against Claridge

established that it was not negligent and thus not responsible for the fall.

The fact that this release contains the limiting language renders the cases relied upon by appellees inapposite. In *Buttermore v. Aliquippa Hospital, supra,* 522 Pa. 325, 561 A.2d 733, *Smith v. Thomas Jefferson University Hospital, supra,* 424 Pa.Super. 44, 621 A.2d 1031, and *Dublin by Dublin v. Shuster, supra,* 410 Pa.Super. 1, 598 A.2d 1296, there was no such limiting language. The releases therein applied to all entities liable for all injuries resulting from the initial accident. The issue in those cases was whether the release was intended to apply to any one other than the tortfeasor named in the release. In concluding that it did, reliance was placed on the fact that "any and all" entities had been released from "any and all" injuries resulting from the initial accident.

In seeking to apply that case law, appellees posit that the release applies to them, although they are not named in it. However, that is not the issue in this case. The issue is whether the language in question renders the release applicable only to the Claridge action. The issue is not who or what is released. The issue is from what are they released. Appellant did not release every entity from liability for any tort that was committed on her in the past, present, and future. She released entities from liability arising from the June 22, 1986 accident "and for which" appellant brought suit against Claridge Hotel in the federal action named. Appellant did not bring suit in the Claridge action against appellees for their malpractice.

The release at issue clearly applies only to Claridge action and improperly was construed as releasing appellees in these two actions. *See also Flatley by Flatley v. Penman, supra,* 429 Pa.Super. 517, 632 A.2d 1342 (where release released only one tortfeasor in multi-tortfeasor suit and not "any and all" entities responsible for injuries, non-settling tortfeasors were not released in the document).

Order reversed; case remanded; jurisdiction relinquished.