J-S39004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DONNA J. EARLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATIENT FIRST PENNSYLVANIA | : | No. 805 MDA 2023 |
| MEDICAL GROUP PLLC, PATIENT | : | |
| FIRST OF PENNSYLVANIA, INC., | : | |
| PATIENT FIRST CORPORATION, AND | : | |
| MARCEL IONITA, MD | : | |

Appeal from the Order Entered May 10, 2023
In the Court of Common Pleas of Berks County Civil Division at No(s):
20 15833

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                **FILED DECEMBER 26, 2023**

Appellant Donna J. Early appeals from the Order entered on May 10, 2023, by the Berks County Court of Common Pleas granting summary judgment in this medical malpractice action.  After careful consideration, we affirm.

This case involves Appellees Patient First and Dr. Marcel Ionita's treatment of Appellant for injuries she suffered to her right hand and left index finger from a dog bite on September 30, 2018.[1]  The trial court set forth

_____

[1] Appellant initially named as defendants Patient First Pennsylvania Medical Group PLLC, Patient First of Pennsylvania, Inc., Patient First Corporation, and Dr. Ionita.  On February 19, 2021, the parties stipulated to the dismissal of Patient First of Pennsylvania, Inc., and Patient First Corporation, leaving
*(Footnote Continued Next Page)*

Appellant's allegations regarding Appellees' treatment of Appellant on September 30, 2018:

> Dr. Ionita placed a suture on each of [Appellant's] affected fingers and discharged [Appellant] with a prescription of amoxicillin-clavulanate. [Appellant] charges that as a result of negligent treatment she received from Patient First and Dr. Ionita, her injuries subsequently worsened with worsening cellulitis, swelling, and the inability to bend her left index finger. The next day, [Appellant] sought and received treatment at Penn State Health St. Joseph's Medical Center where she was diagnosed with tenosynovitis and septic arthritis of the second proximal interphalangeal joint of her left finger, which required surgical intervention, and infection necessitating intravenous administration of antibiotics.

Trial Ct. Op., 5/10/23, at 1.

At some point after the accident, after she received treatment, and before she filed the instant litigation, Appellant, who was unrepresented at the time, signed a release with the dog owners and their insurer as part of her settlement with them ("Release").[2] The Release included the following language:

---

Patient First Pennsylvania Medical Group PLLC and Dr. Ionita as the remaining defendants. We refer to these entities collectively as "Patient First" or "Appellees."

[2] Appellant revealed the existence of the settlement during her May 31, 2022 deposition. Motion for Summary Judgment, 1/13/23, Exh. B, Appellant's Dep., 5/31/22, at 30-31. When Appellant was unable to produce the Release, Appellees subpoenaed it from Erie Insurance The copy in the record is undated and does not include the witness signatures. *Id.*, Exh. C., Release. Nevertheless, Appellant admitted that her signature was on the Release, that the Release pertained to the relevant dog bite, and that she received $25,000 pursuant to the Release. *Id.*, Exh. D., [Appellant's] Response to [Appellees'] Requests for Admissions Directed to [Appellant], dated 12/7/2022, at Part III.

For the consideration of Twenty Five Thousand and 00/100 dollars ($25,000.00), receipt of which is hereby acknowledged, I/we release and discharge, and for myself/ourselves and for my/our heirs, representatives, executors, administrators, successors and assigns, do hereby release and forever discharge Lee and Marilyn Messner hereinafter referred to as the releasee(s), his/her/their heirs, executors, administrators, insurers, successors and assigns, **and any and all other persons, firms, corporations, associations, of and from any and all causes of action,** suits, rights, judgments, claims and demands of whatsoever kind, in law or in equity, **known and unknown, which I/we now have or may hereafter have,** especially the claimed legal liability of releasee(s), **arising from or by reason of any and all bodily or personal injuries** and/or property damage known and unknown, foreseen and unforeseen **which heretofore has/have been or which hereafter may be sustained by me/us arising out of the accident on or about September 30, 2018 at or near 38 Woodside Ave**., T[e]mple in the county of Berks in the state of PA, which liability releasee(s) expressly deny(ies).

Release (emphasis added).

On December 10, 2020, Appellant filed her Complaint against Appellees asserting claims of negligence relating to their treatment of Appellant's injuries on the day she suffered the dog bite. As noted, Appellant did not reference the settlement or the Release until her deposition on May 31, 2022.

On January 13, 2023, Appellees filed their Motion for Summary Judgment, asserting that the Release barred her claims against Appellees. Appellant responded and included an Affidavit of Appellant asserting that, when she signed the Release, she intended to release only the dog owners and not her healthcare providers. She also contended that her claim against Appellees had not accrued at the time she signed the release because she was not aware of the full extent of her injuries resulting from Appellees' medical treatment.

On May 10, 2023, following argument on May 1, 2023, the court entered its Order and Opinion granting Appellees' Motion for Summary Judgment.

On May 30, 2023, Appellant filed her Notice of Appeal. After Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, the court entered an Opinion on June 28, 2023, indicating that the issues had been addressed in its Order and Opinion entered on May 10, 2023.

Appellant raises the following questions on appeal:

A. Did the trial court err[] in granting the Appellee's Motion for Summary Judgment based on the general release Appellant signed despite said release being ambiguous and broad such that Appellant believed that the release was only applicable to settle the action between Lee and Marilyn Messner, the owners of the dog, and their insurance carrier, Erie.

B. Did the trial court err[] in granting the Appellee's Motion for Summary Judgment despite the general release having been signed prior to the within action being known to Appellant?

C. Should the trial court have applied the discovery rule and denied Appellee's Motion for Summary Judgment because Appellant's claim for Medical Malpractice had not occurred when Appellant signed the release such that Appellant did not know of the injury, its cause, and the causal relationship between the injury and the conduct of the Appellee?

Appellant's Br. at 5. As Appellant's questions largely overlap in her challenges to the grant of summary judgment, we address them jointly.

## A.

When reviewing a grant of summary judgment, as in the instant case, appellate courts consider whether "there has been an error of law or an abuse of discretion." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018).

- 4 -

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Summer v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted); ***see also*** Pa.R.Civ.P. 1035.2.  "Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is *de novo*[,] and our scope of review is plenary." ***Nicolaou***, 195 A.3d at 892.

Like the trial court, when reviewing summary judgment motions, we "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." ***Id.*** at 891.  The non-moving party, however, "may not rest upon the mere allegations or denials of the pleadings" but must, *inter alia*, identify "one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion[.]"  Pa.R.Civ.P. 1035.3(1).

In construing releases, as with all contracts, courts seek to "give effect to the intentions of the parties." ***Ford Motor Co. v. Buseman***, 954 A.2d 580, 583 (Pa. Super. 2008) (citation omitted).  "[T]he primary source of the courts understanding of the parties' intent must be the document itself." ***Id.*** (citation omitted).  In discerning the parties' intent from the language, courts "may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the

subject-matter of the agreement." ***Harrity v. Med. Coll. of Pennsylvania Hosp.***, 653 A.2d 5, 10 (Pa. Super.1994) (citation omitted).

Nevertheless, courts are bound by the "ordinary meaning" of the language of the release. ***Buttermore v. Aliquippa Hosp.***, 561 A.2d 733, 735 (Pa. 1989). "[A]bsent fraud, accident or mutual mistake[,]" courts will apply the language adopted by the parties regardless of how "improvident their agreement may be or subsequently prove for either party[.]" ***Id.*** Indeed, the Pennsylvania Supreme Court has repeatedly held that the plain language of a broad release bars claims even where the plaintiff did not intend to release a specific defendant. ***Id***. The court warned that a clear, all-inclusive release should not "be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or [the] plaintiff made an inadequate settlement." ***Id.*** (*quoting* ***Emery v. Mackiewicz***, 240 A.2d 68, 70 (Pa. 1968)). To do otherwise, "would make a mockery of the English language and of the law." ***Id.*** (citation omitted).

Releases, however, "are strictly construed so as not to bar the enforcement of a claim that had not accrued at the date of the execution of the release." ***Fortney v. Callenberger***, 801 A.2d 594, 597 (Pa. Super. 2002); ***see also Vaughn v. Didizian***, 648 A.2d 38, 39 (Pa. Super. 1994) (refusing to bar a medical malpractice claim where the relevant surgery occurred months after the plaintiff signed the release). In addressing when

her claim "accrued" for purposes of the Release, Appellant invokes the "discovery rule." "The discovery rule applies when critical information about an injury eludes detection through no lack of diligence on the plaintiff's part, and the 'discovery' of that information accordingly dictates when a claim accrues [.]" ***Reibenstein v. Barax***, 286 A.3d 222, 234 (Pa. 2022).

**B.**

Appellant asserts that the trial court erred in granting summary judgment to Appellees based upon the Release. She argues that, as an unrepresented layperson, she intended to release only the dog owners and their insurer and did not intend to release Appellees, who are not named in the Release. Appellant's Br. at 12-17. Appellant also claims that the Release was geographically limited to claims arising from the accident "near 38 Woodside Ave." in Temple, Pennsylvania, rather than in Wyomissing where Appellees provided treatment to her. ***Id***. at 12 (quoting Release).

Invoking the discovery rule, Appellant contends that her injuries resulting from Appellee's treatment had "not even developed" at the time she signed the Release. ***Id.*** at 14. Thus, Appellant claims that she "did not know of the injury, its cause, and the causal relationship between the injury and the conduct of the Appellee" at the time she signed the Release. ***Id.*** at 18. Appellant, however, does not provide any details as to what injuries developed, when she became of aware of the injuries, or what delayed her knowledge of the causal connection between Appellees' treatment and the injuries.

- 7 -

In light of the broad language of the Release and in the absence of averments related to Appellant's discovery of her claim against Appellees, we conclude that the trial court did not err in granting summary judgment. Following the Supreme Court's guidance in **Buttermore**, the trial court properly determined that the Release barred Appellant's claims against Appellees based upon the following language:

> I/we release and discharge . . . [the dog owners] . . . and any and all other persons . . . of and from any and all causes of action . . ., which I/we now have or may hereafter have . . . arising from or by reason of any and all bodily or personal injuries . . . known and unknown, foreseen and unforeseen which heretofore has/have been or which hereafter may be sustained by me/us arising out of the accident on or about September 30, 2018 at or near 38 Woodside Ave[.]

Release. The trial court contrasted the Release's broad language, with releases which specifically constrained the reach of the release. Trial Ct. Op. at 5 (citing **Harrity**, 653 A.2d 5).[3]

Moreover, like the trial court, we reject Appellant's claim that the Release is geographically limited to the address where the dog bite occurred. Rather, the Release is limited to claims "arising out of the accident[.]" The inclusion of the date and location serve merely to identify the accident. Appellant's claims against Appellees for their treatment of injuries suffered

---

[3] For example, in **Harrity**, this Court concluded that a release of a tortfeasor named in a federal suit did not extend to tortfeasors named in a state suit where the release including "extremely clear limiting language" specifying that it applied to all actions or claims "arising out of an accident . . . for which suit was brought in the United States District Court for the Eastern District of Pennsylvania" at a specific docket number. 653 A.2d at 11, 6-7.

during the dog bite undeniably "arises out of" the dog bite and are accordingly barred by the plain language of the Release.

We additionally find unavailing Appellant's attempt to invoke discovery rule principles in claiming that her cause of action against Appellees had not accrued at the time she signed the Release. Unlike the cases she relies upon, the medical treatment in this case occurred the same day as the underlying accident and before she signed the Release. Moreover, she fails to explain what prevented her awareness of the injuries or when she became aware of them as would be required for a court to determine that her delayed discovery did not result from her own lack of diligence.[4]

_____

[4] In rejecting Appellant's discovery rule argument, the trial court relies upon a handwritten note on a Patient First document, dated the day of the accident, titled "X-ray Readings." The parties agree that Appellant handwrote the following note on the document to her Erie Insurance adjuster:

> Please add this issue to the settlement claim #, this issue was not in the settlement claim I was offered on June 1 [sic] this has been [sic] on-going problem and should be entered into the offer. I may have to live the rest of my life . . . with this excruciating nerve damage in my arm. I would greatly consider any new offer[.]

Motion for Summary Judgment, Exh. E. The trial court found this note to indicate that Appellee was aware of the extent of her injuries at the time she negotiated the settlement. Trial Ct. Op. at 7. Appellant, however, reads the note as requesting that the X-ray cost be included in the settlement, rather than adding her claims against Appellees. Appellant's Br. at 16-17.

We need not resolve the factual question as Appellant fails to aver any facts regarding when she discovered the alleged increased injury due to Appellees' care or what caused her delayed knowledge.

After careful review, we affirm the trial court's grant of summary judgment because the broad language of the Release barred Appellant's claims, entitling Appellees to judgment as a matter of law.[5]

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/26/2023

---

[5] We recognize that the trial court misstated the standard as requiring the record to be viewed in "a light most favorable to [Appellees] as the moving party[,]" which is the opposite of the proper standard. *Id.* at 7. While we presume that this statement was a typographical error, it does not impact our analysis after viewing the record in a light most favorable to Appellant.