J-A23008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  ESTATE OF MICHAEL SCHAAB,　:　　IN THE SUPERIOR COURT OF
Deceased,　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
APPEAL OF:  MARY SCHAAB, as　　　 :
Administratrix of the Estate of Michael　:
Schaab,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Appellant　　　　　:　　　　　No. 1083 WDA 2014

Appeal from the Order entered on June 12, 2014
in the Court of Common Pleas of Allegheny County,
Orphans' Court Division, No. 02-12-02720

BEFORE:  GANTMAN, P.J., LAZARUS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　**FILED DECEMBER 14, 2015**

Mary Schaab ("Administratrix"), as Administratrix of the Estate of

Michael Schaab ("the Estate"), appeals from the Order of the Orphans' Court

sustaining the claim against the Estate made by the intervenor, Farrell &

Reisinger, LLC ("F&R"), and ordering the distribution of $507,836.57 in

counsel fees and expenses to F&R.[1]  We affirm.

On March 8, 2012, Michael Schaab ("Schaab"), an employee of

Western Psychiatric Clinic and Institute ("Western Psychiatric"), was shot

and killed during a shooting spree by John Shick ("Shick"), a patient at the

facility.  Eventually, police officers shot and killed Shick.  Schaab was

---

[1] The principals of F&R are Thomas J. Farrell, Esquire, Jay K. Reisinger, Esquire, and Tina Miller, Esquire.

survived by his parents, Harry Schaab ("Mr. Schaab"), Administratrix (Mr. Schaab and Administratrix collectively referred to as "the Schaabs"), and Schaab's fiancée, Megan Shively ("Shively"). The Orphans' Court granted to Administratrix Letters of Administration, and named her as administratrix of the Estate.

The Schaabs and Shively retained F&R to investigate Schaab's death, and the possibility of filing civil actions against Western Psychiatric, the University of Pittsburgh Medical Center ("UPMC") (including its affiliates and related entities), and others (all collectively referred to as "UPMC"). F&R's engagement letters for the Schaabs and Shively each contained the following agreement regarding F&R's fees:

> [F&R] will be paid our attorneys fees for representing you in this matter only if **a recovery is actually obtained for you. Our fees will be 35% of any recovery obtained through litigation (after payment of costs described in Paragraph 3 below). In the event a recovery is made without formal litigation, our fee will be 33% of any recovery.**

F&R Fee Agreement at 2 (emphasis in original). The Schaabs and Shively each signed their respective retainer letters.

The Orphans' Court described what next transpired as follows:

> Over the next couple of months, F&R conducted its own investigation and legal research, monitored the investigation being conducted by the District Attorney's Office, monitored the investigations being conducted by OSHA and the [Service Employees International Union ("SEIU")], conferred with other colleagues on the possible legal theories of recovery, met with counsel for UPMC, and met with the District Attorney regarding possible criminal charges and changes to security. The Schaabs, on more than one occasion, expressed sympathy for the parents

of [] Shick and indicated that they did not want to sue them. (N.T., 03/20-24/14, pp. 34-43, 200-218, 360-366)

In late June 2012, the option of engaging in mediation with UPMC was discussed. Thomas Cooper, Esquire ("Attorney Cooper"), was selected as the mediator[,] and the mediation was scheduled for July 20, 2012. F&R met with the Schaabs, along with other family members, at length[,] ten (10) days prior to the mediation to discuss strategy and the mediation process. (N.T., 03/20-24/14, pp. 44-49, 224-231)

The mediation session occurred on July 20, 2012. After an opening statement by Attorney Cooper, Farrell made a statement, Administratrix made a statement, and Jeffrey Romoff (the CEO of UPMC) made a statement. The parties then split up into separate conference rooms and Attorney Cooper began the "shuttle diplomacy" that occurs in mediations. After some period of time and several offers and counteroffers, the figure of $1,500,000 was on the table. Attorney Cooper made it very clear to the Schaabs and F&R that UPMC would not go any higher for a number of reasons. **After a thorough discussion of the options, including the possibility of terminating the mediation and walking out the door, the Schaabs agreed to accept $1,500,000 from UPMC. This figure was memorialized in a document that was handwritten on a yellow legal pad by Attorney Cooper and signed by all parties and counsel** ["the Settlement Agreement"]. (N.T., 03/20-24/14, pp. 51-56, 234-35, 367-68)

Shortly after the agreement was reached, F&R offered to reduce their fee of $500,000 (*i.e.*, 33% of the settlement amount) to $350,000, which would have allowed the Schaabs to accomplish their goal of providing funds to [Schaab's] fiancée to pay off her student loans. (N.T., 03/20-24/14, pp. 58, 236)

F&R received the first draft of a Release from UPMC['s] counsel approximately a week after the settlement was reached. F&R suggested changes to UPMC counsel, all of which were made. The [revised] Release ["the F&R Release"] was sent to the Schaabs for review in early September 2012. Throughout the fall [and] into the early winter, F&R and the Schaabs exchanged emails and spoke about the Schaabs' requested changes to the [F&R] Release. The Schaabs agreed to sign the [F&R] Release, but failed to do so. This led to a meeting at the

end of January 2013. One of the matters discussed at this meeting was a letter that the Schaabs had received from Attorney Mark Homyak regarding his representation of one of the other shooting victims and his intent to sue [Shick's] parents and [Shick's] estate. As F&R was not interested in pursuing these actions on behalf of the Schaabs, they referred the Schaabs to [] Michael O'Day[, Esquire ("Attorney O'Day")]. At the conclusion of the meeting, Mr. Schaab indicated that the [F&R] Release would be signed over the weekend and returned to F&R. (N.T., 03/20-24/14, pp. 59-66, 240-255, 370)

The next communication that F&R received from the Schaabs was an inquiry as to what persons or entities were being "released" under the terms of the [F&R] Release. F&R assured the Schaabs that the only entities being released were UPMC, [Western Psychiatric], and their affiliates and related entities. The last communication that F&R received from the Schaabs was a letter terminating their representation.

Trial Court Opinion, 9/19/14, at 2-5 (unnumbered) (emphasis added).

On March 28, 2013, in the Civil Division of the Court of Common Pleas of Allegheny County ("the Civil Division"), F&R filed a Petition to Enforce the Settlement Agreement between the Schaabs and UPMC. After a hearing, the Civil Division denied the Petition to Enforce. On May 28, 2013, the Schaabs executed a release prepared by Attorney O'Day ("the O'Day Release") settling their claims against UPMC for $1.5 million.

On July 17, 2013, Administratrix filed, in the Orphans' Court, a Petition to Compromise and Settle on Behalf of Estate and Approve Distribution of Proceeds ("Petition to Compromise and Settle"). F&R filed a Motion to Intervene in the Orphans' Court proceeding, and a Notice of Claim against the Estate for $514,061.91, plus interest and costs. F&R asserted that it was entitled to a portion of the settlement proceeds as legal fees, based

upon breach of contract or, in the alternative, the theory of *quantum meruit*. F&R subsequently filed an Amended Motion to Intervene. Administratrix filed Preliminary Objections to the Amended Motion to Intervene.

In late October and November 2013, the Orphans' Court entered Orders authorizing the distribution of $985,938.00 of the Estate's settlement proceeds to the Schaabs, and directed that the disputed portion of the settlement proceeds be placed in escrow. After discovery and hearings,[2] on June 12, 2014, the Orphans' Court entered an Order and Opinion awarding F&R $507,836.57 of the Estate's settlement proceeds for fees and expenses. Thereafter, Administratrix filed the instant, timely appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Administratrix presents the following claims for our review:

1. Whether the Orphans' Court had subject matter jurisdiction over a breach of contract claim?

2. Whether the [F&R Release] was a general release to all claims such that [Administratrix] would have been precluded from any other claims?

3. Whether the doctrine of substantial performance was available to [F&R] as a theory of recovery for [the] contested claims?

Brief for Appellant at 4.

---

[2] At the hearing on November 19, 2013, Administratrix challenged the jurisdiction of the Orphans' Court over F&R's breach of contract claim. On November 25, 2013, Administratrix filed, in the Civil Division, a Complaint asserting causes of action against F&R for breach of contract and professional negligence.

Administratrix first claims that the Orphans' Court lacked subject matter jurisdiction over F&R's breach of contract claim. *Id.* at 19, 33. Administratrix contends that the Orphans' Court should have transferred the matter to the correct division of the court of common pleas. *Id.* at 23. Administratrix further argues that the Orphans' Court deprived the Estate of its right to a jury trial as to its causes of action against F&R for breach of contract and professional negligence. *Id.* at 33. Administratrix claims that this result occurred "because the Orphans' Court entered upon an inquiry in a matter beyond its subject matter jurisdiction." *Id.* Administratrix further argues that the Orphans' Court improperly concluded that a jury trial in this matter would be advisory only and, therefore, unnecessary. *Id.* at 36.

Initially, we observe that Administratrix did not raise this claim in her 1925(b) Concise Statement of matters complained of on appeal. However, the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. ***B.J.D. v. D.L.C.***, 19 A.3d 1081, 1082 (Pa. Super. 2011). Our standard of review is *de novo*, and our scope of review is plenary. ***Id.***

As this Court has explained,

[j]urisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject matter in a given case …. Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect. The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the

- 6 -

inquiry, not whether it might ultimately decide that it could not give relief in the particular case.

***Aronson v. Sprint Spectrum, L.P.***, 767 A.2d 564, 568 (Pa. Super. 2001) (citation omitted).

By statute, the Orphans' Court Division has mandatory and exclusive jurisdiction over "[t]he administration and distribution of the real and personal property of decedents' estates." 20 Pa.C.S.A. § 711(1). The Orphans' Court Division also has mandatory and exclusive jurisdiction over

> [t]he appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts[.] 20 Pa.C.S.A. § 711(12). Taken together, these provisions mandate that the Orphans' Court Division has exclusive jurisdiction of the administration and distribution of decedents' estates, of the control of estate fiduciaries, and of the settlement of their accounts.

***Estate of Ciuccarelli***, 81 A.3d 953, 959 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Regarding the Estate's settlement of its claims against UPMC, the Probate, Estates, and Fiduciaries Code ("the Probate Code"), 20 Pa.C.S.A. § 101 *et seq.*, provides that "[w]henever it shall be proposed to compromise or settle any claim … by or against an estate … the court, on petition by the personal representative or by any party in interest … may enter a decree authorizing the compromise or settlement be made." 20 Pa.C.S.A. § 3323(a). "Where there is no action pending, the statute requires that the settlement be approved by the Orphans' Court having jurisdiction of the

decedent's estate." ***Moore v. Gates***, 580 A.2d 1138, 1141 (Pa. Super. 1990).

In accordance with section 3323(a), on July 17, 2013, Administratrix sought Orphans' Court approval for the Estate's settlement with UPMC, and permission to distribute the settlement proceeds. Petition to Compromise and Settle, 3/17/13. In her Petition to Compromise and Settle, Administratrix averred that she had terminated F&R's representation of the Estate "for cause," and sought the Orphans' Court's approval to pay, from the Estate's settlement proceeds, court costs and attorney fees to Attorney O'Day. ***Id.*** ¶¶ 11, 15.

Administratrix's Petition to Compromise and Settle sought the distribution of personal property of Schaab's Estate, a matter within the mandatory jurisdiction of the Orphans' Court. ***See*** 20 Pa.C.S.A. § 711 (providing for the mandatory and exclusive jurisdiction of the Orphans' Court over "the administration and distribution of the real and personal property of decedent's estates"). F&R disputed Administratrix's proposed distribution of any portion of the settlement proceeds to Attorney O'Day, and submitted a claim for fees and costs incurred as a result of the settlement negotiations with UPMC. ***Id.*** F&R's challenges to the administration and distribution of the personal property of Schaab's Estate (the settlement proceeds) implicate the mandatory and exclusive jurisdiction of the Orphans' Court. ***See*** 20 Pa.C.S.A. § 711(1).

Regarding Administratrix's assertion that the Orphans' Court improperly deprived her of her right to a jury trial, we observe the following. Section 777 of the Probate Code provides for a right to a jury trial, in Orphans' Court, under the following circumstances:

**(a) Title to property.**

When a substantial dispute of fact shall arise concerning the decedent's title to property, real or personal, any party in interest shall be entitled to a trial of such issue by a jury. The verdict of the jury shall have the same effect as the verdict of a jury in a case at law.

**(b) Determination of incapacity.**

Any person against whom proceedings have been instituted to establish his incapacity shall be entitled to a trial of such issue by a jury. The verdict of the jury shall have the same effect as the verdict of a jury in a case at law.

**(c) Will contest and other matters.**

When a contest shall arise concerning the validity of a writing alleged to be testamentary, or concerning any matter other than as provided in subsections (a) and (b) of this section, the orphans' court division, in its discretion at any stage of the proceedings, may impanel a jury to decide any question of fact, but the verdict of the jury shall be advisory only.

20 Pa.C.S.A. § 777(a)-(c). Administratrix's claims do not implicate any of the above circumstances.[3] Accordingly, we cannot grant Administratrix relief on her claim.

---

[3] Although Administratrix cites cases where a jury trial is mandatory, those cases only collaterally involved the administration and distribution of the decedents' real and personal property.

- 9 -

Administratrix next claims that the Orphans' Court improperly determined that the F&R Release was not a general release. Brief for Appellant at 37. Administratrix argues that F&R's termination "was in large measure the result of the failure [of F&R] to address the nature and wording in the [F&R] Release." *Id.* at 48. According to Administratrix, had she signed the F&R Release, she would have been precluded from obtaining the proceeds of her subsequent settlement, procured by Attorney O'Day, in collateral litigation against Shick's family. *Id.* at 46 n.13.

"In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." *Pennsbury Vill. Assocs., LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011). The release is to be read as a whole. *Ford Motor Co. v. Buseman*, 954 A.2d 580, 585 n.7 (Pa. Super. 2008).

> [W]hen construing the effect and scope of a release, the court, as it does with all other contracts, must try to give effect to the intentions of the parties. Yet, the primary source of the court's understanding of the parties' intent must be the document itself. Thus, what a party now claims to have intended is not as important as the intent that we glean from a reading of the document itself. The parties' intent at the time of signing as embodied in the ordinary meaning of the words of the document is our primary concern.

*Id.* at 583 (citation omitted).

> "The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement…." *Harrity v. Medical College of Pennsylvania Hospital*, 439 Pa. Super. 10, 653 A.2d 5, 10 (Pa.Super. 1994) (quotation and citations omitted). There is no requirement that all of the

parties to be discharged from liability are specifically named within a release if the terms of the release clearly extend to other parties. **See In re Bodnar's Estate**, 472 Pa. 383, 372 A.2d 746 (1977). The Pennsylvania Supreme Court has held that when the terms of a release discharge all claims and parties, the release is applicable to all tortfeasors despite the fact that they were not specifically named and did not contribute toward the settlement. **Buttermore v. Aliquippa Hospital**, 522 Pa. 325, 561 A.2d 733 (1989).

**Ford Motor Co.**, 954 A.2d at 583.

Here, the F&R Release provided, in relevant part, as follows:

FOR AND IN CONSIDERATION of the sum of **One Million Five Hundred Thousand Dollars ($1,500,000)** payable within thirty (30) days of the execution of this Full and Final Release, the undersigned hereby fully and forever releases, acquits and discharges: **UPMC, UPMC PRESBYTERIAN SHADYSIDE, AND WESTERN PSYCHIATRIC INSTITUTE & CLINIC,** their trustees, members successors, affiliates, directors, officers, employees, physicians, nurses, therapists, technicians, agents and servants, and **ANY AND ALL OTHER PERSONS, CORPORATIONS AND/OR OTHER ENTITIES** that are or might be claimed to be liable to the undersigned whether or not named herein, including the heirs, executors, administrators, successors, assigns, attorneys, insurers, servants and employees of each of them (hereafter referred to collectively as "Releasees"), from any and all actions, causes of action, claims or demands, of whatever kind or nature, and for any injuries, losses or damages, including loss of companionship, allegedly sustained by the undersigned and related in any way to any services by and/or on the premises of any Releasee up to and including the date of the execution of this Full and Final Release, relating to the incident at issue which occurred on or about March 8, 2012 and thereafter.

F&R Release, ¶ 1 (emphasis in original).

F&R argues that the scope of the F&R release included only UPMC-related entities. Brief for Appellees at 28. According to F&R, this limited scope is evidenced by language releasing causes of action "**related in any**

**way to any services by and/or on the premises of any Releasee ...**

**relating to the incident at issue which occurred on or about March 8,**

**2012 and thereafter**." *Id.*, ¶ 1 (emphasis added). By this language, F&R

argues, the release does not include non-UPMC-related entities, and, in

particular, the Shicks. *Id.* We disagree.

In *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733 (Pa. 1989), the

plaintiff was injured as a result of an automobile accident with Frances Moser

("Moser"). *Id.* at 734. The Plaintiff was taken to Aliquippa Hospital, where

he was examined and received treatment. *Id.* However, subsequent to the

initial treatment, it was determined that the plaintiff had sustained a fracture

of his neck as a result of the accident. *Id.* The plaintiff subsequently signed

a release, which provided, in part, as follows:

> I/We . . . hereby remise, release, acquit and forever discharge []
> Moser, *et al.* . . . and all other persons, associations and/or
> corporations, whether known or unknown, suspected or
> unsuspected, past, present and future claims, demands,
> damages, actions, third party actions, causes of action, or suits
> at law or in equity, indemnity of whatever nature, for or because
> of any matter or thing done, omitted or suffered to be done, on
> account of or arising from damage to property, bodily injury or
> death resulting or to result from an accident which occurred on
> or about the 3rd day of December, 1981 at or near Aliquippa,
> Pennsylvania for which I/We have claimed the said Frances
> Moser, et al. to be legally liable[.]

*Id.* at 734. Thereafter, Buttermore sued Aliquippa Hospital and others,

alleging that the treatment he received at the facility aggravated the injuries

he had sustained in the accident with Moser. *Id.* at 735. Ultimately, the

Pennsylvania Supreme Court held that "a release given to a particular

individual and 'any and all other persons . . . whether herein named or not' [is] applicable to **all** tort-feasors despite the fact they were not specifically named." ***Id.*** (emphasis added).

Reading the F&R Release as a whole, we conclude that the F&R Release, which similarly released "**ANY AND ALL OTHER PERSONS, CORPORATIONS AND/OR OTHER ENTITIES** that are or might be claimed to be liable to the undersigned whether or not named herein," applies to all tort-feasors, including the Shicks. Although the Orphans' Court erred in its interpretation of the F&R Release, such error does not compel an outcome different than that reached by the Orphans' Court. As we discuss *infra*, we agree with the Orphans' Court's determination that F&R is entitled to its fee, as set forth in the Fee Agreement.

Administratrix claims that the Orphans' Court erred in concluding that F&R had substantially performed under its Fee Agreement. Brief for Appellant at 51. According to Adminitsratrix, F&R

> failed to remedy the nature and wording of the [F&R] Release; recurrently offered erroneous legal advice; and repeatedly attempted to coerce or cajole [Administratrix] into taking precipitous action by signing away her legal rights in order to allow [F&R] to collect a fee. Indeed, this conduct manifestly constituted bad faith and[,] when realized, ultimately caused [Administratrix] to terminate the contract [with F&R].

***Id.*** at 52-53. Administratrix challenges the characterization of the O'Day Release as "merely wrap-up paperwork that was necessary to protect the interests of both parties." ***Id.*** at 53. Administratrix further argues that the

- 13 -

Settlement Agreement did not create a "fund," as "no monies were exchanged until after [F&R was] terminated." *Id.* at 54 (initial capitalization omitted).

Although Administratrix correctly states that the F&R Release is a general release, the record, however, supports the determination of the Orphans' Court that F&R substantially performed its obligations under the F&R Fee Agreement.

> [T]he doctrine of substantial performance has been created as an instrument of justice intended to avoid forfeiture because of technical, inadvertent or unimportant omissions. The doctrine is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars….

*Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, 558 (Pa. Super. 2006) (citations and quotation marks omitted).

> It is incumbent on him who invokes its protection to present a case in which there has been no wilful omission or departure from the terms of his contract. If he fails to do so, the question of substantial performance should not be submitted to the [fact-finder].

*Ehrlich v. U.S. Fid. & Guar. Co.*, 51 A.2d 794, 800 (Pa. 1947) (internal quotation marks and citations omitted).

In its Opinion, the Orphans' Court addressed this claim as follows:

The [F&R F]ee [A]greement [] provided that F&R's representation would have three phases: investigation of the matter through interviews with witnesses and the collection of documents, investigations through contact and records requests with UPMC …, and the preparation, filing and litigation of the case. Based upon the testimony of the three F&R attorneys, they conducted their own investigation[;] they performed legal

- 14 -

research[;] they monitored the investigations that were being conducted by the District Attorney's Office, OSHA and the SEIU[;] they  conferred regularly with other colleagues on the possible legal theories of recovery[;] they obtained records from UPMC[;] they interviewed potential trial witnesses who were present on the date of the incident[;] they met on several occasions with counsel for UPMC[;] they met with the District Attorney regarding possible criminal charges and changes to security[;] and finally, they represented the Schaabs at a mediation session with UPMC that resulted in a $1.5 million [] settlement.  That is unquestionably substantial performance of the contract.  There really was not much more that could have been done on behalf of the Schaabs[,] and they have never actually articulated what else they believe should have been done on their behalf.[4]

Orphans' Court Opinion, 9/19/14, at 10 (unnumbered).  Regardless of whether a "fund" was created, the record supports the Orphans' Court's finding that F&R substantially performed its obligations under the F&R Fee Agreement, and its legal conclusions are sound.  We therefore affirm on the basis of the Orphans' Court Opinion, as set forth above, with regard to this contention.  *See id.*

Administratrix also argues that the F&R Fee Agreement bars F&R from recovering an hourly fee.  Brief for Appellant at 57.  According to Administratrix, the F&R Fee Agreement clearly contemplated F&R's representation against "others" in addition to UPMC, services which F&R declined to provide.  *Id.* at 58.  According to Administratrix, "record

---

[4] Our review discloses that F&R procured a significant settlement, in light of the probability that this incident could have been subject to limitations imposed by the Workers' Compensation Law.  Further, the evidence reflects that the Schaabs expressed to F&R their sympathy for the Shicks, and their lack of interest in pursuing an action against them.

evidence shows that when asked by [Administratrix] regarding further representation, [F&R] actually **declined** and then referred [Administratrix] to other counsel to pursue other possible claims." *Id.* This conduct, Administratrix contends, constituted a material breach of the F&R Fee Agreement, relieving Administratrix of any obligation to perform under its terms. *Id.*

Our review of the record discloses that Administratrix did not raise this claim in her Pa.R.A.P. 1925(b) Concise Statement.[5] Accordingly, it is waived. *See In re Estate of Boyle*, 77 A.3d 674, 677 (Pa. Super. 2013) (stating that "in order to preserve claims for appellate review, an appellant must comply with a trial court order to file a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).") (citation omitted).

In her brief, Administratrix also argues that she terminated F&R's services before F&R had filed any lawsuit on her behalf. Brief for Appellant at 60. Relying on paragraph 5 of the F&R Fee Agreement, Administratrix contends that an hourly fee is only payable to F&R if F&R's services were terminated *after* a lawsuit is filed. *Id.* Because no lawsuit was filed, Administratrix asserts that F&R is not entitled to hourly fees. *Id.* Further,

---

[5] In her Concise Statement, Administratrix challenges the Orphans' Court's determination that F&R substantially performed its obligations under the F&R Fee Agreement, and contends that the Orphans' Court erred in concluding that F&R made a recovery on behalf of the Schaabs and the Estate at the time of the UPMC mediation, therefore earning the contingency fee. Concise Statement at ¶¶ 12-13.

Administratrix argues that the quasi-contractual doctrine of *quantum meruit* does not apply where an express agreement exists between the parties. ***Id.***

Administratrix's argument, premised on paragraph 5 of F&R's Fee Agreement, was not raised in her Pa.R.A.P. 1925(b) Concise Statement. Accordingly, it is not preserved for our review. ***See In re Estate of Boyle***, 77 A.3d at 677.

As Administratrix's claims are without merit, we affirm the Order of the Orphans' Court.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015