J-S05017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CLAREMONT ADVISORS, INC., DANIEL O. MAZE, AND DONALD J. MAHONEY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 1849 EDA 2020 |
| SAGE SCHOLARS, INC., AND SAGE CTB, LLC | : | |

Appeal from the Order Entered September 16, 2020
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2016-08682-CT

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 25, 2021**

Daniel O. Maze, Donald J. Mahoney, and Claremont Advisors, Inc. (Claremont) (collectively, Appellants) appeal from the order, entered in the Court of Common Pleas of Chester County, granting summary judgment in favor of SAGE Scholars, Inc. (SAGE).  Upon careful review, we affirm.

Defendant/Appellee SAGE is a Philadelphia-based corporation, formed in 1994 by Dr. James B. Johnston,[1] that assists families in connection with financing higher education through its "Tuition Rewards" program.[2]  SAGE is

---

[1] Since its inception, Dr. Johnston has remained President, Board of Directors Chairperson, and the largest shareholder of SAGE.

[2] SAGE has contractual relationships with approximately 400 private colleges and universities throughout the country that provide guaranteed tuition
*(Footnote Continued Next Page)*

a closely-held corporation with approximately ten shareholders; Maze is a long-time shareholder of SAGE. In December of 1994, Maze began assisting Dr. Johnston in fundraising for SAGE, and, at all relevant times, Maze served on SAGE's Board of Directors.[3] Maze is also the founder, sole shareholder, and sole employee of Claremont, a Texas corporation specializing in fundraising and brokerage activities.

From 2000 through 2012, SAGE—through Dr. Johnston, Maze, Mahoney,[4] and now-deceased SAGE Director Jerry Robinson—made periodic, unsuccessful efforts to partner with Independence Blue Cross (IBC) for its Tuition Rewards program. *See* Dr. Johnston Affidavit, 6/14/20, at 6-9; Maze Affidavit, undated,[5] at 3-6. In January of 2012, Maze discovered that Mahoney was a longstanding friend of Daniel J. Hilferty, who became Chief Executive

_____

discounts for SAGE "member families." Dr. Johnston Affidavit, 6/14/20, at 2. SAGE earns income by contracting with banks, brokerage firms, insurers, and other entities that differentiate themselves from their competitors by attaching SAGE's "Tuition Rewards" as an added value to their product or service. *Id.* For a fee paid to SAGE, those entities' customers become SAGE "member families" who are guaranteed tuition discounts at participating colleges and universities. *Id.*

[3] Maze "began closely working with [Dr.] Johnston focusing on building S[AGE]" starting in 1995, and had "attended all annual . . . Board of Directors meetings." *See* Maze Affidavit, at 3-5. Dr. Johnston explained that Maze has been a shareholder "throughout almost the entire history of the company and a [D]irector until 2016." *See* Dr. Johnston Affidavit, 6/14/20, at 5.

[4] Mahoney is a financial advisor for the Union Bank of Switzerland. He is Maze's longtime friend and business associate.

[5] Maze's affidavit is not dated; it was, however, attached to Appellants' Amended Complaint filed on April 3, 2017.

Officer of IBC in December 2010. *Id.* at 6. Thereafter, effective May 1, 2012, SAGE and Claremont entered into a contract, drafted by Maze (2012 Contract),[6] whereby Claremont would perform sales and marketing services for SAGE in exchange for a monthly fee of $2,500 and a "Success Fee" consisting of 25% of the ongoing revenue generated from "business identified and closed by Claremont." *See* 2012 Contract, 4/30/12, at ¶ 2. The contract specified a term of 365 days from May 1, 2012, and further provided that the term could only be renewed by the mutual, written consent of both parties. *Id.* at ¶ 3. During the term of the 2012 Contract, neither Claremont nor SAGE contracted to do business with IBC. The 2012 Contract was not subsequently renewed. *See* SAGE's Answer and New Matter to Amended Complaint, 4/3/17, at 15.

Prior to the 2012 Contract, A.J. Healy and Michael Ackerman had been working with SAGE to market its Tuition Rewards program on a commission basis. In or around 2007, Healy and Ackerman formed a limited liability company[7] that primarily marketed SAGE's Tuition Rewards program. In or around 2012, SAGE, Healy, and Ackerman formed CTB, whose sole business activity has been marketing SAGE's Tuition Rewards program, albeit under the

---

[6] Maze and Mahoney were not parties to the 2012 Contract.

[7] The company, College Tuition Benefits, LLC, is not involved in these proceedings.

name "College Tuition Benefit" program.[8]  SAGE is a 40% owner of CTB, with Healy and Ackerman each owning 30%.  **See** Healy Affidavit, undated, at 3.[9] In effect, SAGE, CTB, Claremont, and others who market SAGE's Tuition Rewards program compete with one another to market the same product to potential financial partners.[10]

Throughout 2012 and 2013, Healy and Ackerman, on behalf of CTB, attempted to partner with IBC and kept SAGE Directors, including Maze, informed of their efforts.  **Id.** at 9.  In early 2014, Healy successfully negotiated a contract to sell CTB's benefit program—i.e., SAGE's benefit program—to Guardian Life Insurance (Guardian), who administered certain insurance programs for IBC.  Representatives from Guardian touted CTB's benefit program to their contacts at IBC, and, as a result, Healy subsequently met with several IBC executives including Brett Mayfield, Jonathan Stump, and Brian Lobely, Vice President for Marketing and Consumer Business.  **Id.** at 6-9.  Beginning in June 2014, Healy negotiated with IBC for 18 months on

---

[8] When financial partners contract with CTB, that partner pays revenue directly to CTB rather than to SAGE.  Nonetheless, SAGE benefits indirectly as a 40% owner of CTB.  **See** Healy Affidavit, undated, at 3.

[9] Healy's Affidavit is undated, but was attached as Exhibit H to SAGE's brief in support of its motion for summary judgment on June 15, 2020.

[10] During the term of the 2012 Contract, SAGE would have earned a higher percentage of revenue from business generated by Claremont than business generated by CTB, as SAGE was entitled to 75% of the revenue Claremont generated pursuant to the 2012 Contract, but gets paid only 40% of what CTB generates, commensurate with its 40% ownership interest in CTB.  **See** Healy Affidavit, undated, at 4.

CTB's behalf, meeting with IBC executives and exchanging hundreds of calls and emails, without any involvement from Maze, Claremont, or Mahoney. On a few occasions throughout 2014 and 2015, Maze contacted Healy regarding status updates on the CTB-IBC negotiations. Healy, inferring that Maze was calling in his capacity as an interested SAGE Director and shareholder, briefed Maze on his efforts; Maze did not offer or provide, nor did Healy solicit, any assistance in connection with Healy's efforts to finalize a partnership between CTB and IBC. *Id.* at 9. On December 15, 2015, Healy, on behalf of CTB, signed a contract with IBC (IBC Contract), giving IBC access to SAGE's Tuition Rewards program under the name "College Tuition Benefit" program.

On September 13, 2016, Appellants filed suit against SAGE and CTB alleging breach of contract and unjust enrichment. Appellants claimed they are entitled to money arising out of the IBC Contract as a "Success Fee" pursuant to the 2012 Contract. Appellants argued that, although the 2012 Contract was not renewed in writing pursuant to its own terms, the 2012 Contract "was extended beyond the stated period" because "SAGE[] and CTB continued to engage the services of Claremont, Maze, and Mahoney." *See* Amended Complaint, 2/17/17, at ¶ 29. They further argued that CTB became a party to the 2012 Contract when it "assumed control of the [Tuition Rewards] Program . . . [and] became involved in the process to secure business from IBC." *Id.* at ¶ 31-32.

On November 18, 2018, prior to the scheduled depositions of Mahoney and Healy, Appellants entered into a confidential settlement agreement and

mutual release with CTB (the Release).[11]  On January 18, 2019, Appellants filed a "Praecipe to Settle, Discontinue[,] and End as to [CTB] Only."

On June 15, 2019, SAGE filed a motion for summary judgment, arguing, *inter alia*, that the express terms of the Release have the legal effect of releasing SAGE—not just CTB—from the claims underlying the instant matter.[12]  On September 16, 2020, upon consideration of SAGE's motion for summary judgment, Appellants' response, and all related filings, the trial court issued an order granting summary judgment in favor of SAGE and against Appellants.  Specifically, the trial court found that the Release expressly released SAGE as well as CTB in that SAGE was included in the definition of "Released Parties" and was also a "third-party beneficiary" of the Release.[13] Appellants timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b)

_____

[11] In the Release, the parties refer to CTB as "SAGE."  Because this is inconsistent with the way the parties have referred to CTB throughout litigation, they have stipulated that, contrary to the inadvertent and misleading naming convention used in the Release, SAGE CTB, LLC is "CTB" and not "SAGE;" SAGE Scholars, Inc., is "SAGE."  **See** Stipulation of the Parties, 1/13/21, at 3-4.

[12] SAGE further argued that Maze and Mahoney were not parties to the 2012 Contract, and, thus, lacked standing to assert breach of contract claims.  SAGE also claimed that Appellants were not entitled to any "Success Fee" under the 2012 Contract because:  (1) the IBC Contract was finalized two and a half years after the 2012 Contract expired; (2) the IBC Contract resulted in business for CTB, who was not a party to the 2012 Contract; and (3) the "Success Fee" was for business identified and closed by Claremont, but here, Healy identified and closed the IBC Contract.  Motion for Summary Judgment, 6/15/19, at 1-2.

[13] The trial court did not address SAGE's alternative bases for summary judgment.

- 6 -

concise statement of errors complained of on appeal. The trial court issued its opinion pursuant to Rule 1925(a) on October 28, 2020. Appellants present the following issues for our review:

1. Whether the [trial] court committed an error of law by failing to apply the proper legal standard in its analysis of the [] Release.

2. Whether the [trial] court committed an error of law in finding [SAGE] was a Released Party under the [] Release.

3. Whether the [trial] court committed an error of law in finding the claims against [CTB] were released under the [] Release.

4. Whether the [trial] court committed an error of law in granting summary judgment when the record demonstrated that there are issues of material fact related to the intent of the parties as to the scope of the [] Release.

Brief of Appellant, at 5.

In effect, each of Appellants' issues challenge the trial court's grant of summary judgment in favor of SAGE based on its reading of the Release. Our standard of review of an order granting or denying summary judgment is well-settled:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Siciliano v. Mueller***, 149 A.3d 863, 864 (Pa. Super. 2016). Moreover, because the instant dispute centers around language included in the Release, we are mindful that:

> [**W**]**hen construing the effect and scope of a release, the court**, as it does with all other contracts, **must try to give effect to the intentions of the parties.** Yet, the primary source of the court's understanding of the parties' intent must be the document itself. Thus, **what a party now claims to have intended is not as important as the intent that we glean from a reading of the document itself.** The parties' intent at the time of signing as embodied in the ordinary meaning of the words of the document is our primary concern. ***Brown v. Cooke***, 707 A.2d 231, 233 (Pa. Super. 1998) (quotation and citations omitted).

***Ford Motor Co. v. Buseman***, 954 A.2d 580, 582-83 (Pa. Super. 2008). Additionally, we note "[t]here is no requirement that all of the parties to be discharged from liability are specifically named within a release if the terms of the release clearly extend to other parties." ***Id.*** at 583 (citing ***In re Bodnar's Estate***, 372 A.2d 746 (Pa. 1977) and ***Buttermore v. Aliquippa Hosp.***, 561 A.2d 733 (Pa. 1989)). We will adopt "an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through agreement." ***Harrity v. Med. College of Pa. Hosp.***, 653 A.2d 5, 10 (Pa. Super. 1994).

The relevant language of the Release is as follows:

<u>**CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE**</u>

This CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE [] is made by [Plaintiffs/Appellants] and [CTB]. . . .

A. **Plaintiffs commenced suit** against [CTB] . . . ("**Suit**") . . . in which Plaintiffs **demanded damages arising out of a claimed contractual relationship** ("**Dispute**");

B. **The Parties wish to settle** by way of this Agreement **the Dispute *and all other disputes* between them relating to *any* claims *and* the Suit.**

\* \* \*

1. DEFINITION
     1.1 For purposes of this Agreement, **"Released Parties"** means [**CTB**] *and* **each of its** past, present, and future parent corporations, subsidiaries, divisions, **affiliates**, holding companies, merged companies, **related companies**, and acquired companies, *and* **each of the foregoing entities** past, present[,] and future directors, officers, shareholders, employees, subrogees, partners, **principals, agents,** attorneys, joint ventures, joint venturers, **representatives**, and claims handling administrators, and each of the foregoing persons' and entities respective predecessors, successors, assignors, and assigns, whether known or unknown, *and all persons or entities* acting on behalf of, by, through, or **in concert with them.**

2. PURPOSE AND SCOPE
     2.1 **The purpose** of this Agreement **is to resolve fully and finally the Dispute *and all other disputes*** between the Parties *relating to the Dispute* **and the Suit.**
     2.2 . . . This Agreement is the product of informed negotiations between the Parties and their representatives, including counsel[.]
                                        \* \* \*

3. SETTLEMENT AMOUNT AND RELEASES
                                        \* \* \*

     3.2 In consideration of [CTB]'s payment pursuant to Paragraph 3.2 and the other provisions of this agreement, **Plaintiffs release and forever discharge** [**CTB**] **from all past, present, and future** actions, claims, rights, counts, lawsuits, causes of action, obligations, debts, demands[,] or **liabilities** of any kind or nature, . . . **that *in any manner or fashion arise from or relate to* the Dispute**, the Suit, all claims that were or could have been asserted in the Suit, and/or the Dispute

(collectively, the **"Released Claims"**).  **The Released Claims shall specifically include** without limitation **all** past, present, or future actions, **claims**, rights, counts, lawsuits, causes of action, obligations, debts, demands[,] **or liabilities** of any kind or nature . . . **based** in whole or in part **on any claims made in the Suit _or_ in breach of _any express or implied duty_**, obligation, or covenant, **whether contractual, statutory, or otherwise, relating to** the Dispute, the Suit, **all claims that were or could have been asserted in the Suit, and/or the Dispute.**

* * *

8.  GENERAL PROVISIONS

* * *

8.6. **The Agreement was jointly drafted by the Parties and the language of all parts** of this Agreement **shall** in all cases **be construed as a whole** according to its meaning and not strictly for or against any of the Parties.

* * *

8.8. **Nothing in this Agreement shall be construed to make any person or entity** not a Party to this Agreement **a third-party beneficiary** of this Agreement, **_except_ those persons or entities who _are_ beneficiaries of the releases set forth herein, _including_ the _Released Parties._**

Release, 11/18/18, at 1-4 (emphasis added).

The language in the Release is clear, broad in scope, and unambiguous. The parties express several times throughout the Release that CTB is **not** the only entity released of liability.  Indeed, the Release specifically contemplates that "Released Parties" includes all of CTB's affiliates, related companies, joint venturers, as well as all persons and entities who act by, through, or in concert with CTB.  There is no genuine dispute as to the fact that SAGE—as 40% owner of CTB, one of three CTB members, and the entity responsible for creating and maintaining the tuition benefits program that CTB markets as its

- 10 -

sole busines activity—fits squarely within the definition of "Released Parties" as an "affiliate," "related company," or entity that "act[s] by, through, or in concert with" CTB, in accordance with the plain meaning of those terms. *See Ford Motor Co.*, *supra* at 582-83. Section 8.8 of the Release reaffirms that the "Released Parties," i.e., entities besides CTB, "are beneficiaries of the releases set forth herein." *Id.* at 4.

We find, therefore, that the trial court did not commit an error of law or abuse of discretion in concluding that SAGE falls under the Release's definition of "Released Parties," in light of the contract's unambiguous language and "the business model practiced by these two companies." *See* Trial Court Order, 9/16/20, at 2-3 n.1. *See also In re Bodnar's Estate*, *supra* at 387-89 (party need not be specifically named in release nor give consideration for release if terms of agreement clearly extend to it); *Ford Motor Co.*, *supra* at 587 n.7 (release must be read as whole, without ignoring plain language stating it applies to others not designated by name).

As for the liabilities from which SAGE and CTB were released, the Release specifies that the parties wish to settle the "Suit" and/or the "Dispute," which "aris[es] out of a claimed contractual relationship" with CTB, as well as "**all** other disputes . . . relating to **any** claims **and** the Suit." Release, 11/18/18, at 1 (emphasis added). Appellants agreed that the terms of the Release apply to "**all** past, present, and future . . . **claims** . . . of any kind or nature . . . that **in any manner** or fashion . . . relate to the Dispute." *Id.* at 3. To clarify even further, the Release adds that

"Released Claims" specifically include all claims "based in whole or in part" on the "breach of any . . . duty" and "all claims that were or could have been asserted in the Suit[] and/or the Dispute." *Id.* at 3 (emphasis added). Accordingly, the trial court did not commit an error of law or abuse of discretion in determining that Appellants' breach of contract and unjust enrichment claims arising out of the 2012 Contract and/or IBC Contract were barred by the Release as "Released Claims." *See* Trial Court Order, 9/16/20, at 1-4 n.1. *See Ford Motor Co.*, *supra* at 585 (language releasing parties from "any and every claim . . . of whatever kind or nature, on account of or in any way growing out of" underlying dispute is "unambiguous[ and] clear"); *cf. Harrity*, *supra* at 11 (reversing summary judgment in favor of defendants where "extremely clear limiting language" in release discharged them from all liabilities "arising from [plaintiff's fall] . . . **and for which suit was brought**," because plaintiff had not previously brought suit against defendants in connection with fall) (emphasis in original).

In light of the foregoing, we conclude that the trial court properly granted summary judgment in favor of SAGE and CTB. *Siciliano*, *supra*; *Ford Motor Co.*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/25/2021</u>